IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edgar D Contreras, | No. CV-18-00077-PHX-DWL (DMF) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

**TO THE HONORABLE DOMINIC W. LANZA, U.S. DISTRICT JUDGE:**

Petitioner Edgar D. Contreras ("Petitioner"), who is confined in the Arizona State Prison Complex-Tucson, has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. 1). Petitioner was convicted, by guilty plea, in Maricopa County Superior Court, case number CR 2014-116154-001, of conspiracy to commit possession of dangerous drugs for sale (methamphetamine) and was sentenced to a 10-year term of imprisonment (Doc. 1 at 1-2). The Court required an answer to the Petition (Doc. 5). A response and reply were filed (Docs. 13, 14). The matter is ripe for decision. As described below, the undersigned recommends that the Petition be denied and dismissed with prejudice and no certificate of appealability issue.

**I.     STATE COURT PROCEEDINGS**

**A.  Superior Court**

Petitioner was charged in Maricopa County Superior Court case number CR 2014-116154-001 with one count of dangerous drugs for sale - methamphetamine, one count of

possession of marijuana for sale, six counts of misconduct involving weapons, and one count of possession of drug paraphernalia (Doc. 13, Ex. A).

In August 2014, the superior court conducted a settlement conference (Doc. 13, Exs. F, LL).[1]  The prosecutor and judge explained to Petitioner that his combined prison sentence could easily exceed 50 years if he was found guilty at trial of the offenses (Doc. 13, Ex. LL at 5–9).  The State offered Petitioner a plea where he would plead guilty to one count of conspiracy to commit possession of dangerous drugs for sale, the state and Petitioner would stipulate to a sentence of imprisonment of 10 years for that count, and Petitioner would be eligible to serve 85% of that sentence rather than face possible flat time (*Id.* at 5-7, 17–22).  The State would then dismiss the remaining eight counts (*Id.*).  The court noted that it "did not expect such a good plea to tell you the truth" and stated it was a "[v]ery good plea," but that Petitioner had "an absolute right to go to trial" (*Id.* at 23). The court also stated multiple times that Petitioner did not "have to take" the plea (*Id.* at 23, 24).  The court again stated on the record that, "we've told [Petitioner] many times, he doesn't have to take a plea. Solely up to him what he wants to do" (*Id.* at 25).

Petitioner accepted the plea offer to a count of dangerous drugs for sale - methamphetamine, amended to allege conspiracy to commit dangerous drugs for sale; the other eight charges were to be dismissed under the plea agreement (*Id.*).[2]  Petitioner signed a plea agreement for ten years of imprisonment, and the superior court judge conducted a change of plea hearing on the same day in August, 2014 (Doc. 13, Exs. E, F, LL at 27-32). The factual basis for the amended count 1, conspiracy to commit possession of dangerous drugs for sale, did not specify where the methamphetamine had been found (Doc. 13, Ex. LL at 44-46).[3]

In October 2014, Petitioner filed a Motion to Change Counsel where he stated that

[1] Petitioner's mother was present for the settlement conference (Doc. 13, Ex. LL at 3).

[2] A separate plea agreement was also reached on a separately charged case from events on a different day; such case, CR 2014-117124 is not at issue in this habeas matter (Doc. 13, Ex. S, LL).

[3] Methamphetamine had been found by police in the hoodie Petitioner had left in the yard when fleeing police, and methamphetamine had been found the house that was searched by police (Doc. 13, Exs. AA).

his lawyer was not returning his calls, he was too medicated to have signed his plea agreement, and his lawyer had yelled at him to sign the plea agreement (Doc. 13, Ex. G). Counsel was substituted and through his new counsel, Petitioner moved to withdraw from the plea agreement, asserting manifest injustice (Doc. 13, Exs. H, I, J). Petitioner claimed that he had started taking medication for depression and anxiety shortly before the settlement conference and that the new medication had caused him to misunderstand the consequences of the plea; he also claimed that he felt pressured by his counsel and the prosecutor to accept the plea (Doc. 13, Ex. I). After the state responded, the court heard oral argument, found that Petitioner had not demonstrated manifest injustice, and denied the motion to withdraw from the plea agreement (Doc. 13, Exs. L, M, MM, NN). The trial court addressed the benefits of the plea agreement in its ruling:

> There has been absolutely no showing that the result would be any different if [the court] let[s] him withdraw from the plea. [The court] sentenced the co-defendant, it's a contingent plea, earlier this week. So . . . if [the court] allowed him to withdraw, the State's going to be able to withdraw from the codefendant's plea.

> But the cases against the defendant are very, very strong. The State made a showing at the settlement conference they can treat him one of two ways. He has 66 grams of methamphetamines, and he's got a prior criminal history. So they could have either treated him with just the meth statute for 5, 10, 15, or he could have been treated with a person in category 3 with two or more historic prior felonies, and the presumed term would have been 15 and 3 quarter years up to 35.

> So while the plea seems harsh, on the same token, there has been no showing in either an affidavit, or otherwise, there is any defense to these charges. And based upon a review of the presentence reports in both matters, the Court doesn't see a defense.

> So the only reason to withdraw from the plea is some hope to get a different plea because going to trial is going to result in him getting substantially more time. That's not even talking about consecutive sentences.

> Under the biggest break, and that was the big point at the settlement conference, was the presumptive term for a class 2 with two or more priors was 15 and 3 quarters. And based upon the amount of methamphetamines

that were present, the sentence may well have gone substantially higher.

(Doc. 13, Ex. NN at 3-5).

At the sentencing setting in January 2015, the superior court addressed Petitioner's request to represent himself and concluded that Petitioner had knowingly, intelligently, and voluntarily waived his right to counsel (Doc. 13, Ex. N).  Advisory counsel was appointed for Petitioner (*See* Doc. 13, Exs. N, Q, OO, PP). After reviewing Petitioner's Motion to Change Judge, the judge recused, and sentencing did not go forward (Doc. 13, Ex. N).   In February, 2015, Petitioner filed a *pro per* "Motion to Reconsider Withdraw of Pleas" wherein he again argued that his plea was coerced, but for the first time also argued that there had been an illegal search of the house and a motion to suppress should have been filed (Doc. 13, Ex. O).  After the state responded, the court conducted oral argument on the motion before denying it (Doc. 13, Exs. P, Q, R, OO).  In March 2015, the court sentenced Petitioner to a term of 10 years in case number CR 2014-116154-001, the subject of this Petition, pursuant to the plea agreement (Doc. 13, Exs. T, U, PP, Doc. 13, Ex. PP at 5).

Petitioner timely initiated post-conviction relief proceedings where he argued that his plea had been unlawfully induced and also that he had received ineffective assistance of counsel because counsel had not moved to suppress the evidence police had seized during their search of his house (Doc. 13, Ex. W).  Attached to his petition for post-conviction relief, Petitioner included a report from a private investigator Petitioner retained to review his file, including the transcript of the change of plea proceedings and case discovery such as the police reports (Doc. 13, Ex. Y).  The state's response argued that trial counsel had not provided ineffective assistance because the search had been proper, and the state provided the police reports pertaining to the events (Doc. 13, Exs. Z, AA). Petitioner filed a reply and was appointed advisory counsel (Doc. 13, Exs. BB, CC).  After briefing and a status conference wherein Petitioner was present by telephone and the state was present in person, the superior court denied the petition for post-conviction relief (Doc. 13, Exs. DD, FF).

**B. Arizona Court of Appeals**

Petitioner sought review at the Arizona Court of Appeals based on ineffective assistance of counsel for not filing a motion to suppress the evidence obtained from the house (Doc. 13, Exs. EE, FF).  At the conclusion of briefing (Doc. 13, Ex. GG), the court of appeals granted review but denied relief (Doc. 13, Ex. HH).  The court of appeals set out the correct of review for Petitioner's ineffective assistance of counsel claim (Doc. 13, Ex. HH ¶¶ 4, 5).  The court of appeals then reviewed the evidence and arguments which had been before the superior court during the post-conviction relief proceedings:

> With his petition, Contreras filed an investigator's report, created after a review of police reports, that the search was "questionable since no exigent circumstances were expressed or evident at that time." Responding to his petition, the State point out that, contrary to the conclusion of the investigator, officers called to Contreras's home to investigate a report of domestic violence watched through a window as Contreras and a woman appeared to be trying to hid unknown items or move them from one room to another. After Contreras ran from the home and the woman came outside, the woman told officers that her two children, ages two and seven months, remained in the home. In response to his petition, the State argued that at that point, officers were justified in entering the house to check on the welfare of the children and to confirm that no one else remained at risk in the home. When they entered the home to check on the children, they observed a strong smell of marijuana and saw contraband, including marijuana, pills and many electronic items (and car tires) they suspected were stolen. Under a couch cushion, they found a handgun where they had seen the woman attempt to hide something. The State argued that the officers' initial sweep of the residence was valid under the "emergency aid" exception to the warrant requirement, based on the presence of the very young children in the home and the possibility that the perpetrator of the domestic violence might still be inside. *See State v. Bennett*, 237 Ariz. 356, 358–59, ¶ 9 (App. 2015). The State also argued that the inevitable discovery doctrine applied because a preponderance of the evidence would establish that a lawful warrant could have been obtained based on what officers had seen through a window and their discovery of methamphetamine in a hoodie that Contreras left behind in the yard when he dashed away. *See State v. Davolt*, 207 Ariz. 191, 204–05, ¶¶ 35–38 (2004).

(Doc. 13, Ex. HH, ¶ 6).  The Arizona Court of Appeals affirmed the superior court:

- 5 -

Based on the evidence in the record, the superior court did not abuse its discretion in summarily denying relief to Contreras. *See State v. Febles*, 210 Ariz. 589, 595, ¶ 18 (App. 2005) (to raise colorable claim and avoid summary dismissal of petition, defendant must establish, inter alia, counsel's performance was objectively unreasonable based on applicable professional standards); *State v. Donald*, 198 Ariz. 406, 414, ¶ 14 (App. 2000) (to warrant evidentiary hearing, Rule 32 claim "must consist of more than conclusory assertions").

For these reasons, we grant review but deny relief.

(Doc. 13, Ex. HH, ¶¶ 7, 8).

Petitioner did not petition the Arizona Supreme Court for review (Doc. 13, Exs. II, JJ, KK).

## II.     HABEAS PETITION

In his Petition, Petitioner names Charles L. Ryan as Respondent and the Arizona Attorney General as an Additional Respondent (Doc.1).  Petitioner raises one ground for relief in which he alleges he was denied effective assistance of counsel in violation of the Sixth Amendment (Doc. 1 at 6).   Despite Petitioner's guilty plea, the basis for the alleged ineffective assistance of counsel is that trial counsel did not file a motion to suppress evidence obtained from a warrantless search of Petitioner's house (*Id.*).  As reflected in the state proceedings section below and the docket in this matter, the Petition is timely, and the claim is exhausted.

## III.    ANALYSIS

### A.  Standard of Review

On habeas review, this Court can only grant relief if the petitioner demonstrates prejudice because the adjudication of a claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d).  This is a "'highly deferential standard for evaluating state-court rulings' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting

*Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

With respect to § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). As the Ninth Circuit has explained, to find that a factual determination is unreasonable under 28 U.S.C §2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), abrogated on other grounds by *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014). "This is a daunting standard—one that will be satisfied in relatively few cases." *Id.*

The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." 28 U.S.C § 2254(e)(1). The Supreme Court has not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), but has clarified "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) (citing *Wood*, 558 U.S. at 293, 301). Likewise, the heavy burden for an undeveloped factual basis for a claim falls on Petitioner. 28 U.S.C. § 2254(e)(2) requires Petitioner to show that the "factual predicate could not have been previously discovered through the exercise of due diligence" and that the facts "would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

**B. Law Governing Ineffective Assistance of Counsel**

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner arguing ineffective assistance of counsel must establish that counsel's performance was (i) objectively deficient and (ii) prejudiced the petitioner. "Surmounting *Strickland's* high

bar is never an easy task." *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014). The court need not consider both factors if the court determines that a defendant has failed to meet one factor. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both deficiency and prejudice if the habeas petitioner cannot establish one or the other).

A habeas court reviewing a claim of ineffective assistance of counsel must determine "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal citations and quotations omitted). This results in a "doubly deferential" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

> Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases . . . [A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the plea by showing that the advice he received from counsel was [ineffective].

*Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (internal quotations and citations omitted). Thus, because Petitioner "pled guilty upon the advice of counsel, he is limited to challenging his plea by demonstrating that the advice he received from counsel did not constitute effective representation." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).

When reviewing an ineffective assistance of counsel claim, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). (internal quotation marks omitted). Further, the

- 8 -

"failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982)

Here because Petitioner plead guilty,

> the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty. To succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases and that the defendant suffered actual prejudice as a result. **In order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.**

*Lambert v. Blodgett*, 393 F.3d at 979–80 (internal quotations and citation omitted) (emphasis added).  "In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice."  *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).  "In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' *Hill,* 474 U.S., at 59, 106 S.Ct. 366." *Missouri v. Frye*, 566 U.S. 134, 148, (2012).

### C. Applying the Law

Petitioner argues that trial counsel should have filed a motion to suppress the evidence obtained in the house because there were no emergent or exigent circumstances and a welfare check was unnecessary; thus, law enforcement officers could not have justified their warrantless entry and search of his home.  Petitioner's argument assumes that all of the evidence found in the house would have been excluded and "absent the excludable evidence[,] the petitioner would not have been convicted of the underlying offence [sic]" (Doc. 1 at 17).  Petitioner also argues the state courts should have held an evidentiary hearing on his post-conviction claims and that this Court should hold an evidentiary hearing on his habeas claims (Doc. 1).

In support of his claim, Petitioner cites to cases where courts found ineffective

assistance when trial counsel should have filed motions to suppress (Docs. 1, 14), but the cited cases are ones where there was a trial conviction, not a guilty plea. *See Kimmelman v. Morrison*, 477 U.S. 365 (1986); *State v. Fillmore*, 927 P.2d 1303 (Ariz. Ct. App. 1996). Different from those cases, for prejudice here, Petitioner has the burden of showing that had counsel filed a motion to suppress, Petitioner would not have plead guilty under the plea agreement reached and entered. The record does not support such a claim.

Petitioner's arguments ignore that methamphetamine was found in the hoodie that Petitioner discarded in the yard of his house when he ran away as police arrived. The court of appeals recognized significance of the methamphetamine left behind by Petitioner in the yard in applying the inevitable discovery doctrine to the merits of the search warrant ineffective assistance claim (Doc. 13, Ex. HH paragraph 6).[4] The methamphetamine in the hoodie not only supports the state courts' analysis of the search warrant issue itself, but undermines Petitioner's current assertions regarding prejudice. Petitioner plead guilty to conspiracy to possess methamphetamine for sale without reference to where the methamphetamine was found. The methamphetamine in the hoodie he discarded was found in the yard, not the house. Given the methamphetamine in the hoodie alone, Petitioner cannot show prejudice from failure to move to suppress the methamphetamine and other items found in the house.

The record does reflect that Petitioner attempted to take back his guilty plea from shortly after he entered it. First, Petitioner tried, and failed, to get his guilty plea set aside for reasons having nothing to do with the ineffective assistance suppression motion claim in the Petition. This underscores that a suppression motion was not at the forefront of Petitioner's mind when he entered the guilty plea and for a time thereafter. Thus, it is hard to give any credence to Petitioner's blanket assertions that he would not have plead guilty under the plea agreement if a suppression motion had been filed. Further, in his reply in

---

[4] The state court record contains multiple references to methamphetamine in the hoodie Petitioner discarded (Doc. 13, Ex. K , Doc. 13-1 at 46; Ex. Z, Doc. 13-1 at 153; Ex. AA, Doc. 13-1 at 169, 178; Ex. GG, Doc. 13-2 at 68). Based on the methamphetamine in the hoodie, the state argued, in the trial court and at the court of appeals, that Petitioner would have been subject to a presumptive term of 10 years if his conviction only regarding the methamphetamine found in the hoodie (Id.).

support of his arguments for post-conviction relief based on the ineffective assistance suppression motion claim, Petitioner argues that winning the suppression motion "would have resulted in gaining plea bargain leverage" (Doc. 13, Ex. BB, Doc. 13-1 at 182). The hope of gaining plea bargain leverage does not meet Petitioner's burden to show that had counsel filed a motion to suppress, Petitioner would not have plead guilty under the plea agreement reached and would have instead gone to trial, as he now claims (Doc. 1 at 16, lines 21-22).

The plea agreement reached and entered conferred substantial benefit on Petitioner. counts 2, 3, 4, 5, 6, 7, 8, and 9 were dismissed as part of the plea agreement. The structure of the plea agreement, amending the count of conviction, count 1, to conspiracy to possess dangerous drugs for sale, assured flat time imprisonment would not be imposed on Count 1. Further, a certain prison sentence was stipulated in the plea agreement, when Petitioner could have faced a much higher sentence if he lost at trial. It is a reasonable conclusion that these benefits were the motivating factors for Petitioner in entering his guilty plea, and they were perceived and understood by his counsel as well. Petitioner has not shown that trial counsel's performance was ineffective in going forward with the change of plea with Petitioner without the filing of a motion to suppress evidence from the house. Petitioner has not shown that he would have risked losing the plea agreement benefits by trying to suppress the evidence from the house.

Despite Petitioner's guilty plea, the Arizona Court of Appeals squarely addressed Petitioner's claim that counsel was ineffective for not filing a motion to suppress. The undersigned has carefully reviewed the record, finds the record sufficiently developed, and finds that the state court factual determinations were reasonable. Undersigned cannot say that no reasonable jurist would disagree that the state court erred. To the contrary, the state court's determinations were reasonable application of clearly established federal law. Thus, Petitioner has not established that his counsel's performance was objectively deficient. Given that the state court's reasonable factual determinations support a conclusion that the evidence from the house would not have been suppressed had a motion

to suppress been filed, there was no objectively deficient conduct by counsel and there was no prejudice to Petitioner from trial counsel not filing a motion to suppress.

## IV.    CONCLUSION

Petitioner has not demonstrated that he was prejudiced, nor has he demonstrated that trial counsel's performance was objectively deficient.  Petitioner has not shown that the state courts' determination of the facts was unreasonable, nor has Petitioner met the standard for undeveloped facts.  The Arizona Court of Appeals found that Petitioner was not entitled to relief, and this Court cannot say that this was contrary to, or an unreasonable application of, *Strickland*.

Further, a Certificate of Appealability should be denied and leave to proceed *in forma pauperis* on appeal be denied because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and jurists of reason would not find the Court's assessment of Petitioner's constitutional claims "debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **denied and dismissed with prejudice** without an evidentiary hearing.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should be denied and leave to proceed *in forma pauperis* on appeal be denied because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and jurists of reason would not find the Court's assessment of Petitioner's constitutional claims "debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen

days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 27th day of December, 2018.

_____

Honorable Deborah M. Fine
United States Magistrate Judge